IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JACOB M. R.,[1]

       Plaintiff,

vs.

COMMISSIONER of SOCIAL SECURITY,

       Defendant.

Case No. 17-cv-974-CJP[2]

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his claim for continuation of Supplemental Security Income (SSI) benefits.

## Procedural History

Plaintiff was awarded SSI benefits as a child. His eligibility for benefits was reviewed at age 18 as required by 42 U.S.C. §1382c(a)(3)(H)(iii), and he was found to be no longer disabled. He appealed and requested a hearing. After holding an evidentiary hearing, ALJ Nathaniel Plucker denied his claim on August 2, 2016. (Tr. 12-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 20.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. Whether the ALJ erred by failing to account for deficits of concentration, persistence, or pace in the residual functional capacity finding.

2. Whether the ALJ erred in failing to identify and reconcile apparent conflicts between the Vocational Expert's testimony and the Dictionary of Occupational Titles.

## Applicable Legal Standards

If a person under the age of 18 is awarded disability benefits, 42 U.S.C. §1382c(a)(3)(H)(iii) requires the agency to review his continuing eligibility to receive benefits when he turn 18, applying the criteria for eligibility applicable to adults.

To qualify for SSI, an adult claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

The five step process described above applies here, except that step 1 (determination of substantial gainful activity) is omitted. 20 C.F.R. § 416.987(b)

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether

3

any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Plucker followed the steps two through five described above. He found that plaintiff had severe impairments of anxiety disorder, schizoaffective disorder, and a learning disorder.[4] He determined that these impairments did not meet or equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in ability to maintain concentration, persistence or pace. (Tr. 20).

The ALJ determined that plaintiff had the residual functional capacity (FC) to do work at all exertional levels, limited to "work involving simple, routine tasks and simple work-related decisions" and to "low stress work defined as work that

---

[4] Schizoaffective disorder is a mental disorder in which a person experiences a combination of schizophrenia symptoms, such as hallucinations or delusions, and mood disorder symptoms, such as depression or mania. https://www.mayoclinic.org/diseases-conditions/schizoaffective-disorder/symptoms-causes/syc-20354504, visited on August 7, 2018.

involves no interaction with the public and only occasional interaction with coworkers and supervisors. In addition, this work involves only occasional decision-making and only occasional changes in the work setting." (Tr. 21).

Based upon the testimony of a vocational expert (VE), the ALJ found that plaintiff was not disabled because he was capable of performing jobs that exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1995. He was found to be disabled as of May 2012 because of diagnoses of affective mood disorders and schizophrenia. Plaintiff's 18th birthday was in December 2013. He was determined to be no longer disabled in March 2014. (Tr. 79-80, 90).

2. **Evidentiary Hearing**

Plaintiff was not represented by an attorney at the evidentiary hearing in April 2016. (Tr. 50).

In response to questioning by the ALJ, plaintiff testified regarding his treatment, impairments, symptoms, and activities. (Tr. 54-65). He worked at a Wendy's fast food restaurant for two weeks in January or February of 2016, and had a psychotic breakdown which caused him to go to the hospital. He said he

"started to hear voices again started to get very bad anxiety attacks, got hopelessness, like there's no point for it anymore." (Tr. 60). Plaintiff testified that he was unable to work because of "My anger, my temper, mood swings, the voices if I get overwhelmed or stressed out. They can come back even with medicine, stuff like that. It's overwhelming." (Tr. 61).

Plaintiff said he sometimes stopped taking his medication because he thought he was better. The prior month, his doctor starting giving him a shot so that she could manage his schizophrenia and make sure he was getting his medication. (Tr. 64). Plaintiff testified that he recently began seeing a new "psych doctor" at Chestnut Hill. The ALJ said he would get those records. (Tr. 55). However, those records are not in the administrative transcript.

A vocational expert testified. The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person would be able to do jobs such as salvage laborer, equipment washer, and night cleaner. However, if the person were limited to no interaction with coworkers or supervisors, there would be no unskilled jobs available. In addition, if he were to be off-takes for 20% of the workday, he would not be able to maintain employment. (Tr. 70-72).

### 3. Medical Records

Plaintiff was hospitalized for two days in September 2014 because he was hearing voices. He had about five psychiatric hospitalizations in the past and had been diagnosed with schizoaffective disorder. (Tr. 1196-1197).

Dr. Kelechi Loynd was plaintiff's treating psychiatrist. (Tr. 1148-1173,

1218-1229). The last record from her is dated August 2015. She noted that he had a long history of auditory hallucinations. He had at least nine psychiatric hospitalizations for auditory hallucinations and self-harming behaviors. On that visit, he was improved but had residual mood and anxiety symptoms despite medicine compliance. She adjusted his medications. (Tr. 1218).

4.  **State Agency Consultants' Mental RFC Assessment**

In March 2014, M. W. DiFonso, Psy.D., assessed plaintiff's mental RFC based on a review of the file contents. (Tr. 1086-1088). She completed an agency form (SSA-4734-F4-SUP) that is commonly used for this purpose. The form consists of several lists of work-related mental activities. The consultant is asked to rate the claimant's limitations in these areas.

Dr. DiFonso assessed plaintiff as "moderately limited" in ability to understand, remember and carry our detailed instructions; ability to maintain attention and concentration for extended periods; ability to interact appropriately with the general public; and ability to accept instructions and respond appropriately to criticism from supervisors. In the section for narrative remarks, Dr. DiFonso indicated that plaintiff's cognitive and attentional skills are intact and adequate for simple one-two step and semiskilled tasks. His interpersonal skills were moderately limited by anger control issues. She recommended "moderate limit of social expectations." (Tr. 1088).

A second state agency consultant, Russell Taylor, Ph.D., assessed plaintiff's mental RFC in September 2014. (Tr. 1189-1191). In addition to the limitations assessed by Dr. DiFonso, he indicated that plaintiff had moderate limitations in

ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to respond appropriately to changes in the work setting. In his narrative remarks, Dr. Taylor said that plaintiff would have a moderate limitation in persisting for a normal work period. (Tr. 1191).

## Analysis

Plaintiff first argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. (Tr. 20). He noted that, while the step three determination is not a

mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 21). Later, when explaining his RFC assessment, the ALJ gave "significant weight" to the opinions of Drs. DiFonso and Taylor. He noted that both doctors indicated that plaintiff would have moderate limitations in "functioning," but did not mention that they assessed a moderate limitation in maintaining concentration, persistence, or pace. He also failed to note that Dr. Taylor specifically opined that plaintiff would have a moderate limitation in persisting for a normal work period. (Tr. 25).

Neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to "work involving simple, routine tasks and simple work-related decisions" and to "low stress work defined as work that involves no interaction with the public and only occasional interaction with coworkers and supervisors. In addition, this work involves only occasional decision-making and only occasional changes in the work setting."

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685.

The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner argues that *O'Connor-Spinner* does not mandate the use of any specific terminology in the RFC assessment. However, she ignores the actual holding of that case, i.e., that a limitation to simple tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace.

She does not argue that the other mental limitations included in the RFC assessment (interaction with public and coworkers/supervisors, frequency of decision-making and change in the workplace) were designed to address plaintiff's limitation in maintaining concentration, persistence or pace.

Citing *Varga*, the Commissioner argues that the ALJ was entitled to rely on the narrative remarks in the state agency consultants' RFC assessments, rather than on the check-box portion of the forms. But, that is true only "where that narrative adequately encapsulates and translates those worksheet observations." *Varga*, 794 F.3d at 816. The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Further, Dr. Taylor said in his narrative remarks that plaintiff would have a moderate limitation in persisting for a normal work period. The ALJ ignored this part of the opinion in his decision, and the Commissioner likewise ignores it in her brief. The VE testified that a person who was off-task for 20% of the workday could not sustain employment. The ALJ was not free to simply ignore the part of Dr. Taylor's opinion that conflicted with his conclusion. "Because [the doctor's] recommendation suggested further limitations, it contradicted the ALJ's finding on residual functional capacity. The ALJ was therefore required to provide enough analysis to allow a reviewing court to determine why she rejected it. Because the ALJ failed to do so, her decision to deny benefits cannot satisfy the substantial evidence standard." *Spicher v. Berryhill*, ___ F.3d ___, 2018 WL 3677566, at *3 (7th Cir. Aug. 3, 2018).

In view of the disposition of plaintiff's first point, it is not necessary to analyze his second argument. Obviously, on remand, the ALJ should ask the VE whether there are any conflicts between her testimony and the information in the Dictionary of Occupational Titles. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

The ALJ's errors require remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012)(internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the

Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: August 10, 2018.**

<u>s/ Clifford J. Proud</u>
**CLIFFIRD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**